61 F.3d 903
 Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paul GIBBS, Plaintiff-Appellant,
v.
Silas NORMAN, Dr.; D. Rao, Dr., Defendant-Appellee.
 No. 93-1929.
 United States Court of Appeals, Sixth Circuit.
 July 11, 1995.
 
 Before JONES and NELSON, Circuit Judges, and RONEY, Senior Circuit Judge.*
 PER CURIAM:
 
 
 1
 In his second appeal, Paul D. Gibbs, a pro se prisoner appeals from a grant of summary judgment in favor of the defendants in this suit filed pursuant to 42 U.S.C. Sec. 1983. This case has again been referred to a panel of the court pursuant to Rule 9(a), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R. App. P. 34(a).
 
 
 2
 Gibbs brought a section 1983 action against Dr. Silas Norman and Dr. Daleep Rao in their official capacities as employees of Michigan Department of Corrections (MDOC) for alleged medical mistreatment. Gibbs alleged that the physicians' failure to remove a steel plate from his arm and to perform liposuction amounts to deliberate indifference implicating the Eighth Amendment. The district court decided that the dispute centered around a difference of medical opinion between a prisoner and prison physicians, and as such, did not establish a constitutional issue. We affirm.
 
 
 3
 The variations of certain facts concerning plaintiff's injury as recited in prior court opinions, plaintiff's appellate brief, and plaintiff's pro se complaint are irreconcilable. We therefore rely upon the facts as presented in Gibbs' complaint. In April 1986, Gibbs received a steel plate and a bone and skin graft in his left arm as treatment for a gunshot wound. The treating physician told Gibbs that when the bone healed, he would perform a sublinear suction to remove the excess fat from the grafted shoulder skin. Two weeks later, Gibbs was arrested for a probation violation, and the suction was never performed.
 
 
 4
 Two years later on June 15, 1988, Gibbs' left arm was broken during an assault by inmates, and he was treated by a physician at an outside hospital, who put in a new steel plate, stapled the arm, and put on a cast.
 
 
 5
 Gibbs was returned to prison June 25, 1988, with doctor's orders that the staples be removed and the cast changed in 7-10 days. Despite Gibbs' repeated requests, his staples were not removed until August 22, 1988. In February 1989, Gibbs filed a suit in a Michigan Court of Claims against Norman alleging negligence. It was dismissed for lack of jurisdiction.
 
 
 6
 In March 1989, Gibbs filed this section 1983 suit in federal court against Drs. Norman and Rao. Gibbs sought damages for Norman's alleged refusal to remove the staples from his arm in a timely manner, and for declaratory and injunctive relief to compel Rao to remove the steel plate from his arm and perform liposuction on his skin graft. Gibbs alleged Rao refused to perform these procedures, even though Dr. Lanigan recommended in 1986 that these procedures be done once the wound had healed. The district court dismissed the complaint as frivolous on July 26, 1989.
 
 
 7
 In June 1990, this Court affirmed the dismissal of Gibbs' damages claim because he had not stated he was suing defendants in their personal rather than official capacities. Nevertheless, the Court remanded the case for a determination as to whether Gibbs was entitled to declaratory and injunctive relief to compel performance of liposuction surgery to complete the skin graft received before his incarceration. The court, however, did not address Gibbs' complaint regarding removal of the steel plate.
 
 
 8
 Defendants filed a motion to dismiss, or, in the alternative, for summary judgment based upon Eleventh Amendment immunity and failure to state a claim. Dr. Rao attached an affidavit to the motion stating that he carefully reviewed Gibbs' medical record and contrary to Gibbs' assertion, Rao found no recommendation in the file from any physician recommending liposuction surgery to complete an earlier skin graft. Rao opined that the procedure was neither medically necessary nor advisable due to a high risk of infection from the surgery. He advised further consultation before such surgery should be authorized. Rao did not comment about the removal of the steel plate by the physician who treated Gibbs for his 1986 injury.
 
 
 9
 In response, plaintiff filed a brief opposing dismissal to which he attached a letter dated October 8, 1990 from Dr. Edward Lanigan, the physician who treated Gibbs for his 1986 injury. The letter stated that, as to the metal plate, "[W]e would expect to eventually have this plate removed," but he wanted Gibbs evaluated by an orthopedic surgeon prior to removal to assure the bone was healed. In conjunction with removing the plate, Lanigan also wrote that "we could do some liposuction or other revision of the skin and subcutaneous flap to obtain a more normal contour of the forearm." Gibbs also filed motions to amend his complaint to address only the facts relevant to the removal of the steel plate and the liposuction, and to strike the psychologist's report attached to the defendants' motion.
 
 
 10
 The magistrate judge held that the record clearly indicated defendants had not been "deliberately or wantonly indifferent to plaintiff's serious medical needs," nor did they "knowingly refuse[ ] to provide urgently needed medical care that resulted in residual injuries which could have been prevented with timely attention." The magistrate judge recommended that defendants' summary judgment motion be granted and plaintiff's complaint dismissed.
 
 
 11
 The district court declined to follow the magistrate judge's recommendation. In its September 5, 1991 order, the court referred to the letter by Dr. Lanigan in which he recognized the need for an opinion of an orthopedic surgeon as to further medical treatment. The court stated it was not satisfied with the state of the record without an opinion from an orthopedic surgeon, and noted that Rao's affidavit was equivocal as to the need for surgery. The court appointed counsel to arrange for the necessary medical evaluation and to file appropriate papers. The court also commented that the motion to strike required an answer.
 
 
 12
 Dr. Julie Dodds, an orthopedic surgeon, examined plaintiff and wrote a letter to plaintiff's counsel. In the letter, Dodds only addressed plate removal and said nothing about the liposuction. Dodds recounted that Gibbs was treated for a 1986 gunshot wound with "plate fixation, and an osseocutaneous free flap." She noted that 1990 x-rays indicate "apparent healing of the fracture," and opined that "[i]f the plate is symptomatic, plate removal would be recommended .... However, if the patient is asymptomatic from the plate, removal ... is purely elective...."
 
 
 13
 Gibbs filed a summary judgment motion in which he relied upon Dodds' letter, Lanigan's October 8, letter, and his medical history. Defendants also filed a motion for dismissal or for summary judgment in which they argue that this case amounts to nothing more than a difference of opinion between a prisoner and prison physicians concerning appropriate care.
 
 
 14
 The court treated the motions as cross-motions for summary judgment and granted defendants' motion, finding no federal constitutional violation. The court held that Gibbs failed to establish the requested procedures are medically necessary, relying upon the fact that Dodds' letter fails to make an unequivocal statement regarding the necessity of the procedures, and in the absence of the unequivocal statement, the dispute is merely a difference of medical opinion.
 
 
 15
 A prisoner-plaintiff alleging an Eighth Amendment claim for inadequate medical treatment must allege defendants' acts or omissions amounted to deliberate indifference to plaintiff's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The Supreme Court has defined "deliberate indifference" as acting with criminal recklessness, or a conscious disregard of a substantial risk of serious harm. Farmer v. Brennan, 128 L.Ed.2d 811 (1994).
 
 
 16
 Gibbs' complaint fails to meet this standard. In essence, Gibbs' complaint is one of medical malpractice. It is clear from his medical records and Gibbs' own statements that he did receive treatment for his medical condition. Yet, Gibbs ignores the distinction between cases like the ones he relied upon involving a complete denial of medical care, see, e.g., Boretti v. Wiscomb, 930 F.2d 1150 (6th Cir. 1991) (nurse failed to administer dressing changes and pain medication to inmate's leg wound); and Fitzke v. Shappell, 468 F.2d 1072 (6th Cir. 1972) (detainee with serious brain injury denied medical care for 12 hours after his arrest), and those cases where the prisoner alleges he has received inadequate medical care. See Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).
 
 
 17
 In Westlake, this Court makes clear the importance of the distinction:
 
 
 18
 Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.
 
 
 19
 Id.
 
 
 20
 While Gibbs may disagree with the physicians regarding the type of medical treatment necessary, such a difference of opinion does not give rise to a section 1983 claim. See Estelle, 429 U.S. at 107; Westlake, 537 F.2d at 860 n.5 (6th Cir. 1976); Schmidt v. Wingo, 499 F.2d 70 (6th Cir. 1974). Even if that treatment were erroneous, medical malpractice does not become a constitutional violation because the patient is incarcerated. Estelle, 429 U.S. at 106.
 
 
 21
 The district court correctly determined that Gibbs' charge of inadequate treatment does not rise to the level of a constitutional violation as he has not alleged or shown intentional or wanton acts or deliberate indifference to his medical problems as required in Estelle and its progeny.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Paul H. Roney, United States Court of Appeals for the Eleventh Circuit, sitting by designation